UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                               :
UNITED STATES OF AMERICA,                      :
                                               :    13 Crim. 31 (LGS)
            -against-                          :
                                               :    **ORDER**
BONIFACIO FLORES-MENDEZ,                       :
                              Defendant.       :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Defendant, a forty-two-year-old inmate at FCI Hazelton, moves for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). The government opposes the motion. For the reasons discussed below, the Court grants Defendant's motion for a sentence reduction in part and denies it in part. Defendant's sentence will be reduced to 360 months plus ten years' supervised release.

I.  **BACKGROUND**

Defendant has been incarcerated for approximately nine years since being arrested and charged with sex trafficking and related offenses at the age of 33. Defendant and his brother were the leaders of a sex trafficking conspiracy from at least 2005 to 2013. On January 9, 2014, Defendant pleaded guilty to a Superseding Indictment charging him with one count of conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594. Section 1594 makes it a crime, among other things, to conspire to engage in sex trafficking by force, fraud or coercion in violation of 18 U.S.C. § 1591. Defendant's sentencing guidelines range was 360 months to life imprisonment. The Probation department recommended a sentence of 360 months. On May 30, 2014, Defendant was sentenced to life in prison. Defendant's appeal was dismissed based on Defendant's waiver of certain rights to appeal as part of his guilty plea. Defendant's motion to

vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 was denied in 2018. *Flores-Mendez v. United States*, No. 13 Crim. 31, 17 Civ. 2767, 2018 WL 357311 (S.D.N.Y. 2018).

Defendant first filed a pro se motion for compassionate release and sentence reduction on February 18, 2022. After the Government filed its response, the Court denied Defendant's motion without prejudice and appointed pro bono counsel to assist Defendant with filing a renewed motion on March 16, 2022. Defendant filed a renewed motion for compassionate release and sentence reduction on June 17, 2022, attaching records of how Defendant has spent his time in prison and letters from family, friends, fellow incarcerated individuals and Defendant himself. The Government opposes the motion.

## II.    STANDARD

Defendant moves for a reduction of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act of 2018. Under that provision, before a sentence reduction can be granted, (1) "an inmate must exhaust administrative remedies by requesting such relief from prison authorities," (2) "a court must consider the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable," and (3) the court must make a "finding that extraordinary and compelling reasons warrant such a reduction," "such that, in light of the[] § 3553(a) factors, a sentence reduction . . . would not simply constitute second-guessing of the sentence previously imposed."[1] *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (cleaned up); 18 U.S.C. § 3582(c)(1)(A).

---

[1] While "[t]he statute sets out a fourth requirement: that the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission,'" "the policy statement governing compassionate release -- U.S.S.G. § 1B1.13 -- governs only motions brought by the Director of the Bureau of Prisons, not those brought directly by inmates." *Keitt*, 21 F.4th 67, 71 n.2 (quoting § 3582(c)(1)(A) and citing *Brooker*, 976 F.3d at 236-37).

A court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them" and has "discretion in determining what are extraordinary circumstances." *United States v. Brooker*, 976 F.3d 228, 234, 237 (2d Cir. 2020). The defendant bears the burden of showing he is entitled to a sentence reduction. *United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021). If the defendant establishes extraordinary or compelling circumstances, the potentially applicable § 3553(a) factors include "(1) the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (3) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant;" (4) "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1)-(2), (6); *see also Keitt*, 21 F.4th at 71.

### III.   DISCUSSION

The parties do not dispute that Defendant has exhausted his administrative remedies. For the reasons discussed below, the Court finds that extraordinary and compelling circumstances warrant a sentence reduction and that the factors set forth in § 3553(a) weigh in his favor.

### A. Extraordinary and Compelling Circumstances

Defendant has shown extraordinary and compelling reasons that justify a sentence reduction from life imprisonment to 360 months, or 30 years. "[A] district court's discretion in this area -- as in all sentencing matters -- is broad." *Brooker*, 976 F.3d at 237. "Where no single factor alone may justify release, the total circumstances may still rise to the level of

extraordinary and compelling reasons for release." *United States v. Resto*, No. 8 Cr. 757, 2021 WL 1109467, at *2 (S.D.N.Y. Mar. 23, 2021) (internal quotation marks omitted). Although "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason," it is a factor that district courts may consider in deciding whether to reduce a sentence. *Brooker*, 976 F.3d at 238. Similarly, Defendant's "complaint that his sentence was too long in the first place" may "qualify as an extraordinary and compelling circumstance," particularly where "other extraordinary and compelling circumstances justify a reduction of an *unusually long* sentence." *Id.* at 237, 238. Here, Defendant's rehabilitation, severe prison conditions, medical condition, and duration of his sentence together satisfy the extraordinary and compelling standard.

### 1. Rehabilitation

The weight of evidence of Defendant's rehabilitation is powerful, given his life sentence, though not unblemished. In the near decade since he was sentenced, Defendant has worked at self-improvement and left a lasting, positive impression on those around him. Defendant has learned English while incarcerated, and he is working toward his GED. Defendant hopes one day to use his English skills to gain lawful employment, he now teaches Spanish to other English-speaking men with whom he is incarcerated, and he translates for fellow Spanish speakers. Defendant has held numerous jobs, including as an orderly on his unit, and he is known as a hard worker.

Many of the twenty-five letters from persons presently or formerly incarcerated with Defendant at FCI Hazelton speak specifically to how well liked and trusted Defendant is by fellow incarcerated people, and how noticeably serene and non-violent he is even in highly charged social situations that threaten to turn violent. Other letters speak to Defendant's generosity, from sharing basic necessities like toiletries and shoes, to cooking for others, to

comforting inmates in times of emotional stress and crocheting stuffed animals that others send to their families. Others speak simply to his positive and inspirational attitude and his commitment to living with purpose despite serving a life sentence.

While incarcerated in a maximum-security prison where violence is common, as some of the above-mentioned letters reflect, Defendant has committed only three disciplinary infractions. *See United States v. Cruz*, No. 3:94 Cr. 112, 2021 WL 1326851, at *13, *15 (D. Conn. Apr. 9, 2021) (noting that a spotless disciplinary record is rare "especially for a defendant who, serving a life without parole sentence, has no motivation to earn good time credit by avoiding inappropriate conduct"). Defendant was cited for fighting with another inmate in 2013, very shortly after beginning his incarceration. Defendant also was found purportedly in possession of a prison-made weapon in 2015 and 2016. Without denying the potential seriousness of those charges, it bears noting Defendant that has gone six years without a disciplinary violation and is now widely known as a particularly peaceful person. *See United States v. Ramirez*, 571 F. Supp. 3d 40, 51-52 (S.D.N.Y. 2021) (discounting infractions incurred more than six years prior to granting motion for compassionate release).

Letters describing Defendant's changed demeanor and his spotless record the last six years paint an unmistakable picture of rehabilitation. *Cf. United States v. Tellier*, No. 92 Crim. 869, 2022 WL 1468381, at *3 (S.D.N.Y. May 10, 2022) (noting among defendant's extensive record of rehabilitation that he maintained an "extremely positive outlook on life despite his difficult circumstances"). The fact that Defendant's rehabilitation has not taken the form of law study, a doctoral degree, or screenplays and novels, particularly while he learns English in prison, does not make his rehabilitation less than extraordinary. *Cf. United States v. Fisher*, 493 F. Supp. 3d 231, 236-38, 239 (S.D.N.Y. 2020).

The Government's argument that Defendant has not taken responsibility for his actions or shown remorse misreads Defendant's letter. Defendant's letter does not downplay the gravity of his crimes, but rather acknowledges that he was wrong to downplay his crimes when he was younger and immature, and that he now understands that what he did was wrong. Similar arguments regarding inadequate remorse have been rejected by other courts. *See, e.g.*, *Fisher*, 493 F. Supp. 3d at 238; *United States v. Rodriguez*, 492 F. Supp. 3d 306, 315 (S.D.N.Y. 2020).

The letters of support from Defendant's family and community in Queens and in Mexico are notable though less relevant since the circumstances do not warrant Defendant's imminent release. Defendant is consistently described as hardworking, and several people state that they would be willing to employ him if he returned to Mexico. Defendant is also well loved by his family, particularly his young daughters.

### 2. Conditions of Confinement and Medical Conditions

In addition to his rehabilitation, the harsh conditions of Defendant's confinement and his medical conditions contribute to a finding of extraordinary and compelling circumstances warranting a sentence reduction. Defendant suffers from diabetes that has been managed with medication at times, but he reports that his condition has recently begun deteriorating again. Defendant reports that he is losing his eyesight and has had difficulty obtaining certain eye care while incarcerated. While those conditions alone are insufficient to warrant a sentence reduction, they weigh in favor of a sentence reduction.

### 3. Length of Defendant's Sentence

The length of Defendant's sentence is also extraordinary and weighs in favor of a sentence reduction, in combination with the factors discussed above. *Brooker*, 976 F.3d at 238. The only other sex-trafficking defendant to whom the Government points who received a life

sentence under similar circumstances is Defendant's brother.  The Court credits the sentencing judge's determination of Defendant's individual culpability, separate from his brother's, particularly given that Defendant was not coerced into participating and ran the conspiracy himself after his brother was incarcerated.  But it is clear from the Government's submissions that Defendant's crimes were less serious than his brother's.  Nearly all the acts of violence in the Government's recitation of the facts were committed by Defendant's brother, though Defendant witnessed some and failed to intervene.  The Government forthrightly states that Victim-1, the Government's primary example of Defendant's direct exploitation and abuse of victims, "was largely the victim of [Defendant's] brother."  None of this is to discount the harm Defendant caused directly, as the Government's narrative and victim impact statements make clear, only to explain that consistency does not demand that Defendant's sentence be the same as his brother's.

Looking beyond this case, Defendant points to several defendants recently sentenced in this district to between 156 to 300 months for similar conduct.  The Government asserts that some of those individuals had lower guidelines ranges than Defendant and were sentenced at the top of the ranges, as Defendant was.  But others convicted of sex trafficking of minors or by force, fraud or coercion, or conspiracy to do so, were sentenced below guidelines.  *See, e.g.*, *United States v. Brooks*, 17 Cr. 607 (S.D.N.Y.); *United States v. Merchant*, No. 18 Cr. 527 (S.D.N.Y.).  One defendant had the same guidelines range as Defendant, *see United States v. Dupigny*, 18 Cr. 528 (S.D.N.Y.), and one had an even longer range, *see United States v. English*, 18 Cr. 492 (S.D.N.Y.), and those defendants received twenty-five-year terms of imprisonment.

The Court credits the sentencing judge's determination that Defendant's conduct puts him among the most culpable sex-trafficking defendants.  Even so, a life sentence is

extraordinary. Thirty years already is longer than a typical sentence for murder or manslaughter. *See, e.g.*, *Graham v. Florida*, 560 U.S. 48, 93 (2010) (Roberts, J., concurring) (noting that life without parole was "far more severe than the average sentence imposed on those convicted of murder or manslaughter, who typically receive under 25 years in prison"); *United States v. Qadar*, No. 00 Cr. 603, 2021 WL 3087956, at *12 (E.D.N.Y. July 22, 2021) (noting that the average federal murder sentence in fiscal year 2020 was about 21 years); *Cruz*, 2021 WL 1326851, at *13 (noting that in 1996, the average federal murder sentence was around 24.5 years and the median around 22 years); U.S. Sent'g Comm'n, *Interactive Data Analyzer*, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited October 31, 2022) (showing the median sentence length for murder for fiscal years 2015 through 2021 was 240 months and the average was 262 months).

While each of the circumstances above may be insufficient on their own, taken together, the substantial evidence of Defendant's rehabilitation, the impact of the harsh conditions of Defendant's confinement on his medical conditions, and the length of his sentence, combine to constitute extraordinary and compelling reasons warranting consideration of whether a sentence reduction comports with the § 3553(a) factors. *Brooker*, 976 F.3d at 237-38 ("The only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation alone shall not be considered an extraordinary and compelling reason." (cleaned up)).

B. **Sentencing Commission's Policy Statements and Section 3553(a) Factors**

Reducing Defendant's sentence from life to a term of 360 months of imprisonment satisfies the goals of sentencing and the 18 U.S.C. § 3553(a) factors. Section 3553(a) provides that a sentence should be "sufficient, but not greater than necessary," and that courts must consider, among other factors, "(1) the nature and circumstances of the offense and the history

8

and characteristics of the defendant;" (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (3) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant;" (4) "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1)-(2), (6); *see also Keitt*, 21 F.4th at 71. "[T]he weight to be afforded any § 3553(a) factor is a matter firmly committed to the discretion of the sentencing judge." *Keitt*, 21 F.4th at 72 (quoting *United States v. Verkhoglyad*, 516 F.3d 122, 131 (2d Cir. 2008)).

The first several § 3553(a) factors are discussed above. The first subsection requires consideration of the nature and circumstances of the offense, along with the defendant's history and characteristics. All agree that Defendant was convicted of an extremely serious crime, namely sex trafficking by force or fraud. Defendant was involved in running -- and at one point ran on his own -- a network of brothels and delivery services in which women were forced to work as prostitutes, including sometimes with violence or threats of violence. At sentencing, Judge Forrest stated that Defendant's crime did not "give[] [him] a right to be in our civilized society again," that his "crime defies any boundary that the Court was able to arrive at, stated in years" and that his sentence was "based upon the depravity of the conduct, the duration of the conduct, the number of victims, [and] the magnitude of the harm that they suffered."

Defendant has worked hard at rehabilitation in the years since, despite his life sentence, and is on a trajectory to continue to do so. Although a decision to reduce a sentence is never taken lightly, courts have granted such motions based on defendants' rehabilitation even when

the underlying conviction involved multiple or particularly violent murders. *See, e.g.*, *United States v. Underwood*, No. 88 Cr. 822, 2021 WL 3204834, at *1 (S.D.N.Y. Jan. 15, 2021) (granting compassionate release motion where at least five, brutal murders were committed at defendant's direction); *United States v. Ramirez*, 571 F. Supp. 3d 40, 42, 52 (S.D.N.Y. Nov. 10, 2021) (reducing forty-eight-year sentence by eight years where defendant was leader of drug trafficking organization and was personally involved in two murders); *Rodriguez*, 492 F. Supp. 3d at 308, 317 (reducing sentence to thirty years where defendant participated in torture and murder of government informant). Defendant's "history and characteristics did not freeze on the day of his arrest and incapacitation," and "'evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors.'" *Underwood*, 2021 WL 3204834, at *6 (quoting *Pepper v. United States*, 562 U.S. 476, 491 (2011)). Defendant's present-day characteristics and post-sentencing history weigh in favor of release.

The second subpart of § 3553(a) recognizes "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." At sentencing, Judge Forrest recognized "that sex trafficking is a growing transnational crime and concern. It's a crime with many participants, many who have found that exploiting the vulnerable as a way to make money, and it's a crime that we as a society have to deal with in the strongest possible terms. We have to refuse to be a people who will allow such conduct to go unpunished, and the punishment must be severe." Judge Forrest's sentence was intended to "send[]a very serious message to those engaged in transnational sex trafficking that such crimes will be dealt with in the harshest possible way." But as discussed above, three decades in prison for Defendant's crime will serve all of these purposes, particularly in comparison to sentences of others convicted of similar crimes and of other serious crimes

including murder. *See United States v. Wong Chi Fai*, No. 93 Cr. 1340, 2019 WL 3428504, at *4 (E.D.N.Y. July 30, 2019) ("[N]otwithstanding the seriousness of [defendant's] criminal conduct," the sentence served (twenty-six years of a life sentence) appropriately "reflect[s] the seriousness of the offense," "promote[s] respect for the law" and "provide[s] just punishment for the offense." (alterations in original)).

The third subpart of § 3553(a) recognizes "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." This consideration is consistent with the Sentencing Guidelines policy statement that certain sentence reductions should be accompanied by the court's finding that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Judge Forrest stated at sentencing her "abiding belief . . . that [Defendant] need[s] to be incapacitated." Here, the need for incapacitation has not dissipated in just nine years, but Defendant has made strides toward rehabilitation. There is no reason to think Defendant will still be a danger to society if released after thirty years, at 63 years old. *See* U.S. Sent'g Comm'n, The Effects of Aging on Recidivism Among Federal Offenders, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf; *see also United States v. Piggott*, No. 94 Cr. 417, 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2020) ("It is also well-established that recidivism decreases significantly with age."); *United States v. Bass*, 462 F. Supp. 3d 176, 189 (N.D.N.Y. 2020) (citing the Sentencing Commission's guidelines to support the unlikelihood of defendant's recidivism given his advanced age, and noting defendant's "mostly clean disciplinary record from his time in prison" and that defendant's ability to "largely follow[] the rules while incarcerated suggests that he will do so once released, which minimizes the danger he poses to the community").

The fourth sub-part of § 3553(a) addresses "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Defendant's sentence has already begun to accomplish this end, as Defendant has learned English and begun teaching it to others, as well as taking GED classes. Defendant's medical needs are likely to be more acute after the passage of another 21 years in prison, and would be better served outside of prison.

Finally, reducing Defendant's sentence will achieve the aim of the fifth sub-part of § 3553(a), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." As discussed above, Defendant's sentence is far longer than the sentences of others convicted of comparable sex trafficking offenses, and exceeds the averages for other serious crimes such as murder. The Court does not question Judge Forrest's determination that Defendant is among the most culpable sex trafficking offenders and deserves one of the longest sentences for that crime, but a thirty-year sentence is consistent with that finding.

As discussed above, a sentence reduction would reduce the disparity between Defendant's sentence and those of others convicted of similar offenses. Other courts in this Circuit have denied sentence reductions for individuals convicted of conspiracy to commit sex trafficking of minors and/or by force, fraud or coercion, when their original sentences were much shorter than Defendant's. *See, e.g.*, *United States v. Hope*, 464 F. Supp. 3d 646, 649 (S.D.N.Y. 2020) (denying compassionate release where Defendant was convicted of a scheme that "employed a myriad of manipulative and violent tactics to sexually exploit vulnerable underage girls and young women for his own financial gain," had a guidelines range of 360 months to life and was sentenced to 216 months, or eighteen years); *United States v. Johnson*, 17 Crim. 212,

2020 WL 6891457, at *1 (denying reduction of 121 month sentence for "conspiring to commit sex trafficking of a minor"); *United States v. Whaley*, No. 09 Crim. 619, 2021 WL 5232596, at *1 (E.D.N.Y. Nov. 9, 2021) (denied reduction of twenty-five-year sentence for sex trafficking conspiracy that involved violence and other forms of coercion). Under all the circumstances, including Defendant's life sentence, his considerable and ongoing rehabilitation, his medical difficulties and the disparity in sentencing compared with other sex traffickers, a sentence reduction is warranted.

### IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for a sentence reduction is GRANTED in part and DENIED in part. Defendant's sentence will be reduced from a term of life imprisonment to a term of 360 months, with ten years of supervised release. Defendant's conditions of supervised release will be stated at the resentencing hearing, which will be scheduled in a separate order. The Government shall confer with Probation and defense counsel, and thereafter the parties shall file a joint letter by November 14, 2022 proposing special conditions of supervised release.

The Clerk of Court is respectfully directed to close the motions at Docket Numbers 470 and 472.

Dated: October 31, 2022
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**